FILED

2013 JUN 20 P 2:15
CIVIL DISTRICT COURT

IN THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2013-5887                                                          DIVISION:

PHILIP JOSEPH ROSEN, Individually and on Behalf of
All Others Similarly Situated

SECTION 13

versus

DALE N. ATKINS
CLERK, CIVIL DISTRICT COURT

STEWART ENTERPRISES, INC., FRANK B. STEWART, JR., JOHN B. ELSTROTT, ALDEN
J. MCDONALD, JR., THOMAS M. KITCHEN, ASHTON J. RYAN, JR., RONALD H.
PATRON, JOHN K. SAER, JR., SERVICE CORPORATION INTERNATIONAL, and RIO
ACQUISITION CORP.

NEW ORLEANS, LA 70112
504-407-0000

FILED: _____ ---

_____
DEPUTY CLERK

DATE: 6/20/2013 at 14:18
CASE#: 2013 - 05887  SEC.: 13

**PETITION FOR BREACH OF FIDUCIARY DUTY**

RECEIPT#: 389216

Plaintiff Philip Joseph Rosen ("Plaintiff"), by his attorneys, for his complaint against

Defendants (defined below), alleges upon personal knowledge and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

PETITION FOR BREACH OF CONTRACT

**SUMMARY OF THE ALLEGATIONS**

JSC

$   444.50  $   444.50  $   0.00

1.     This is a direct stockholder class action brought by Plaintiff on behalf of himself and

the public shareholders of Stewart Enterprises, Inc. ("Stewart Enterprises" or the "Company")

INDIGENT LEGAL FEE
$   10.00  $   10.00  $   0.00

against Stewart Enterprises, its Board of Directors (the "Board"), Service Corporation International

("SCI"), and Rio Acquisition Corp. for breaches of fiduciary duties owed by the Board to Stewart

$   25.00  $   25.00  $   0.00

Enterprises' public shareholders in connection with the proposed sale of Stewart Enterprises to SCI

5 Additional Defendant(s) @ $141.00
141.00

in an all-cash transaction valued at approximately $1.4 billion (the "Proposed Transaction"). In

TOTAL PAID CASE $ 201305887:    $1066.00

pursuing the Proposed Transaction for an inadequate price and through an inadequate process, each

RECEIPT TOTAL $1,207.00

of the Defendants has violated applicable Louisiana corporate law by directly breaching and/or

AMOUNT RECEIVED $1,066.00

aiding breaches of fiduciary duties of loyalty and due care owed to Plaintiff and the proposed class.

CHANGE DUE $.00

2.     Under the terms of the Proposed Transaction, Stewart Enterprises shareholders will

===================================
CHECK #30911 Amt. $1,066.00

receive the following: each share issued and outstanding would be converted automatically into the

right to receive $13.25 in cash, plus the Additional Per Share Consideration (if any), without interest

(the "Merger Consideration").

- 1 -

VERIFIED

3.      As detailed herein, the Board failed to adequately discharge its fiduciary duties to the shareholders by, among other things: (i) failing to ensure they will receive maximum value for their shares; (ii) failing to conduct an appropriate sale process; and (iii) agreeing to preclusive corporate and deal protections in the Merger Agreement (defined below) with SCI that will dissuade or otherwise preclude the emergence of a superior offer. Moreover, SCI aided and abetted the Board's breaches of fiduciary duty by, among other things, procuring unreasonable deal protections and convincing the Board to disregard the interests of Stewart Enterprises' public shareholders.

4.      Accordingly, this action seeks equitable relief compelling the Board to properly exercise its fiduciary duties to the shareholders and to enjoin the consummation of the Proposed Transaction.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Stewart Enterprises because it is a Louisiana corporation and because the Individual Defendants (as defined below) are directors of Stewart Enterprises, or conduct business in or are citizens of Louisiana.

6.      Venue is proper in this Court under Code of Civil Procedure Articles 42(a) and 593 because: (i) the action is brought on behalf of a Class; (ii) one or more of the Defendants either resides in or maintains executive offices in Orleans Parish; and (iii) a substantial portion of the conduct at issue took place and had an effect in Orleans Parish.

## PARTIES

7.      Plaintiff is, and at all times relevant hereto was, a shareholder of Stewart Enterprises.

8.      Defendant Stewart Enterprises is a Louisiana corporation with its corporate headquarters located at 1333 South Clearview Parkway, Jefferson, Louisiana 70121. Stewart Enterprises is the second-largest provider of funeral and cemetery products and services in the United States. The Jefferson Parish company operates 218 funeral homes and 141 cemeteries in 24 states and Puerto Rico and employs about 5,000 people. It is publicly traded on the NASDAQ under the ticker symbol "STEI."

9.      Defendant Frank B. Stewart, Jr., ("Frank Stewart") currently serves as the Chairman of the Board and is a member of the family that founded Stewart Enterprises. Frank Stewart joined the family business in 1959 and became President and Chief Executive Officer ("CEO") in 1966.

10.      Defendant John B. Elstrott ("Elstrott") has served as a member of the Board since 2011. Elstrott is a Clinical Professor of Entrepreneurship and the founding director of the Levy-

Rosenblum Institute for Entrepreneurship at Tulane University's Freeman School of Business, which was started in 1991.

11.     Defendant Alden J. McDonald, Jr. ("McDonald") is President, CEO, director, and a founder of Liberty Bank and Trust Co., a privately-held bank that is one of the five largest African-American-owned financial institutions in the United States. He has served as a member of the Board since 2001.

12.     Defendant Thomas M. Kitchen ("Kitchen") is President and CEO of Stewart Enterprises. He has served as a member of the Board since 2004.

13.     Defendant Ashton J. Ryan, Jr. ("Ryan") has served as a member of the Board since 2004. He is the chair of both the Audit Committee and the Investment Committee and a member of the Corporate Governance and Nominating Committee. He is the former President and CEO of Firstrust Corporation and its lead subsidiary First Bank and Trust.

14.     Defendant Ronald H. Patron ("Patron") was elected to the Board at the Company's 2006 annual shareholders meeting. He is a member of the Corporate Governance and Nominating Committee, the Audit Committee and the Investment Committee.

15.     Defendant John K. Saer, Jr. ("Saer") has served as a member of the Board since 2011. He is a Managing Director of GI Partners, a real estate private equity firm, and serves as Executive Chairman of CenterPoint Properties Trust.

16.     Defendants Frank Stewart, Elstrott, McDonald, Kitchen, Ryan, Patron, and Saer are sometimes collectively referred to herein as the "Individual Defendants."

17.     Defendant SCI is a company with its corporate headquarters at 1929 Allen Parkway, Houston, Texas, 77019.  SCI provides death-care products and services in North America and Germany and operates through two segments: Funeral and Cemetery.  Its funeral service and cemetery operations comprise funeral service locations, cemeteries, funeral service/cemetery combination locations, crematoria, and related businesses. As of December 31, 2012, it operated 1,437 funeral service locations and 374 cemeteries in 43 states, eight Canadian provinces, and the District of Columbia; and 12 funeral service locations in Germany. It is publicly traded on the New York Stock Exchange under the ticker "SCI."

18.     Defendant Rio Acquisition Corp. is a Delaware corporation and a wholly owned subsidiary of SCI, incorporated for the purpose of effecting the Proposed Transaction.

19.     The Individual Defendants, Stewart Enterprises, SCI, and Rio Acquisition Corp. are collectively referred to as "Defendants."

- 3 -

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

20.    By reason of their positions as officers and/or directors of the Company, the Individual Defendants are in a fiduciary relationship with Plaintiff and the other members of the Class, and owe them the highest obligations of care and loyalty.

21.    Specifically, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in a change in corporate control, they have an affirmative fiduciary obligation to act in the best interests of the company's public shareholders, including the duty to obtain maximum value under the circumstances. To diligently comply with these duties, the directors may not take any action that:

   (a)    adversely affects the value provided to the corporation's shareholders;

   (b)    will discourage or inhibit alternative offers to acquire control of the corporation or its assets;

   (c)    contractually prohibits them from complying with their fiduciary duties; and/or

   (d)    will provide the directors, executives or other insiders with preferential treatment at the expense of, or separate from, the public shareholders, and place their own pecuniary interests above those of the interests of the company and its public shareholders.

22.    In accordance with their duties of care and loyalty, the Individual Defendants, as directors and/or officers of Stewart Enterprises, are obligated to:

   (a)    determine whether a proposed sale of the Company is in the shareholders' best interests;

   (b)    maximize shareholder value by considering all *bona fide* offers or strategic alternatives, including the Proposed Transaction; and

   (c)    refrain from implementing unreasonable measures designed to protect a transaction to the exclusion of a more beneficial deal, and from participating in any transaction in which their loyalties are divided.

23.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, have violated and are continuing to violate the fiduciary duties they owe to Plaintiff and the Company's other public shareholders, including the duties of care and loyalty.

## SUBSTANTIVE ALLEGATIONS

24.    On May 29, 2013, Stewart Enterprises and SCI publicly disclosed the Proposed Transaction and announced that they entered into the Agreement and Plan of Merger, dated May 28, 2013 (the "Merger Agreement"), pursuant to which the Company's shareholders will receive the Merger Consideration.

25.    Industry leader SCI has sought to purchase Stewart Enterprises for at least the past several years. Indeed, five years ago, SCI made a failed bid to purchase Stewart Enterprises for $11 per share. According to a May 30, 2013 article on the website connectingdirectors.com, an online publication for funeral professionals, "The question was never if Service Corporation International was going to acquire Stewart Enterprises, but when."

### The Proposed Transaction Does Not Adequately Value
### Stewart Enterprises' Recent Performance

26.    The Proposed Transaction does not adequately value the recent performance of Stewart Enterprises.  The strength of Stewart Enterprises was highlighted by the Company's executives following the announcement of Stewart Enterprises' first quarter 2013 results. For example, during the conference call held by Stewart Enterprises in connection with the first quarter 2013 financial results, Defendant Kitchen noted how extraordinarily well Stewart Enterprises was performing, stating, in pertinent part, the following:

> Let me begin by noting that it's not an exaggeration to say fiscal year 2013 is off to a superb start, with significant increases in revenue and profitability, continuing the positive momentum we generated during fiscal year 2012. For the first quarter of 2013, *we reported an 80% increase in earnings per share* to $0.18 and generated $15.5 million in net earnings. I'm pleased to note *this is the highest quarterly net earnings and earnings per share in more than 10 years.*

> Overall, total revenue improved 9%, which led to a 27% improvement in gross profit and a 340 basis point expansion in gross profit margin compared to the same period of last year. We believe these strong results demonstrate the power of leverage in our business and the importance of continuing to effectively manage our cost. (Emphasis added.)

27.    Continuing on the topic of Stewart's explosive earnings growth, Lewis J. Derbes, Stewart Enterprises' Chief Financial Officer, stated, in pertinent part, the following:

> As for our operating performance during the first quarter, *we improved net earnings from continuing operations by 76% and earnings per share by 80%,* compared to the same period of last year. In addition, during the first quarter of this year, we produced $136 million in consolidated revenue and $32 million in gross profit. We are particularly pleased with the balance we achieved between our funeral and cemetery segments this quarter.

> *        *        *

> Finally, *our adjusted EBITDA increased 24%* to $32.5 million for the first quarter of 2013, representing a 24% adjusted EBITDA margin. In addition, our adjusted

EBITDA for the trailing 12 months is now $116 million, which is *the highest EBITDA in more than five years.* (Emphasis added.)

28.     This significant growth continues.  On June 10, 2013, Stewart Enterprises reported results for the second quarter of 2013.  *The Company reported a 40% increase in earnings per share.*  Commenting on the Company's performance, defendant Kitchen stated, in pertinent part, the following:

> We will continue to operate the business with a high degree of performance and believe that fiscal year 2013 is off to a strong start. For the six months ended April 30, 2013, we improved adjusted earnings from continuing operations by 27 percent and adjusted earnings per share by 30 percent. *These improvements were driven by a $12 million increase in revenue and a $10 million increase in gross profit, which reflects the highest six months of revenue and gross profit in six years.* We are pleased with our second quarter results which include an increase in gross profit by 10 percent, adjusted earnings from continuing operations by 13 percent and adjusted earnings per share by 15 percent as compared to the second quarter of 2012. Our funeral business benefitted from an improvement in same-store calls for the fourth consecutive quarter, which contributed to a 3 percent improvement in funeral revenue compared to the second quarter of last year. *Overall our cemetery business produced a 29 percent improvement in gross profit, primarily from an increase in our revenue related to trust activities, combined with a reduction in our expenses throughout the quarter.* Some additional highlights of the second quarter compared to the same quarter of last year include:

> - Improving overall revenue, gross profit and earnings from continuing operations for the fifth consecutive quarter and

> - improving same-store funeral services for the fourth consecutive quarter;

> - Generating operating cash flow of $33.2 million, an improvement of $12.5 million, and free cash flow of $29.9 million, an improvement of $13.0 million;

> - Realizing an 8 percent improvement in adjusted EBITDA to $32.3 million or a 24.1 percent adjusted EBITDA margin, as discussed in the table "Reconciliation of Non-GAAP Financial Measures;"

> - Producing total returns for the quarter of 6 percent in our preneed trusts and 5 percent in our cemetery perpetual care trusts; and

> - Announcing a 12.5 percent increase in the Company's quarterly dividend to $.045 per share and returning $3.8 million in dividends to our shareholders. (Emphasis added.)

29.     While details concerning the background of the Proposed Transaction have yet to be disclosed to the public shareholders, at least one point is clear: the value of Stewart Enterprises stock is greater than the consideration offered in the Proposed Transaction, particularly when considering the Company's recent performance.

**The Proposed Transaction Does Not Take Into Account the
Explosive Near-Term Growth that Will Occur in the Industry**

30.     Additionally, the consideration being offered does not account for the Company's future growth prospects.  Indeed, the death-care industry has few major players and is poised for significant growth.  According to a presentation given by Stewart Enterprises during the May 14,

2013 Bank of America Merrill Lynch 2013 Healthcare Conference, the oldest of the Baby Boomers are turning 68 this year, and for the next 19 years the number of senior citizen will explode like never before in the history of this country – or what Stewart Enterprises termed "attractive industry fundamentals" (*see* graphic below).



Source: The Age Curve, March 2009, Ken Gronbach

31.    Indeed, the population of persons 65+ is expected to grow from 38.6 million in 2010 *to 46.8 million in 2015 and to 54.8 million by 2010* (see graphic below).



32.    This unprecedented growth in senior citizens will drive unprecedented growth in the death-care field.  The consideration being paid to Stewart Enterprises shareholders fails to consider the seismic shift currently taking place in the death-care industry.

**The Proposed Transaction Does Not Take Into Account the**
**"Significant Synergies" that Will Be Created by the Merger**

33.     Additionally, because Stewart Enterprises shareholders are being paid cash – rather

than in shares of the combined company – they will miss out on the significant synergies created by

the merger.   To illustrate, the press release issued by SCI in connection with the Proposed

Transaction, in describing the expected synergies created by the combination of the two companies,

stated, in pertinent part, the following:

> SCI has a proven track record of successfully integrating large acquisitions and
> delivering or exceeding its expected synergies.   *SCI expects to generate*
> *approximately $60 million in annual cost savings from the combined companies.*
> *These synergies are anticipated to be fully realized over a 24 month period after the*
> *closing date.*  The synergies are generally expected to be comprised of reduced back-
> office systems and infrastructure costs, elimination of duplicate public company and
> management structure costs, and improved purchasing power.  Material workforce
> reductions at the field operating level are not expected.    While SCI clearly
> understands the need to combine the two companies efficiently, it intends to maintain
> an infrastructure presence within Stewart's base of New Orleans, Louisiana.  SCI
> estimates it will incur cash costs of approximately $30 million to generate these
> synergies over the two year period after the closing of this transaction.
>
> *SCI believes the acquisition is well-aligned with its long-term strategy of delivering*
> *sustainable growth and enhancing shareholder value.*  Excluding anticipated one-
> time implementation, financing and closing costs, the acquisition is expected to be
> immediately accretive to normalized earnings per share and adjusted cash flows from
> operations. SCI also expects the acquisition to generate a compelling return that is
> consistent with its capital deployment strategy. (Emphasis added.)

34.     Additionally, during the press conference held after the announcement of the

Proposed Transaction, Tom Ryan, the President and CEO of SCI, described the expected synergies

as "significant."

35. ·   The presentation made available in conjunction with the conference call (the

"Presentation") listed the "significant synergies" as follows:

*Significant synergies*

*We expect to realize approximately $60 million in annual cost savings from the*
*combined company within 24 months after close*

- Synergy opportunities are significant

  - Reduced back-office systems and infrastructure costs

  - Elimination of duplicative public company and management structure
    costs

  - Improved purchasing power through greater scale

- $60 million synergies represent 11.4% of Stewart's revenues

- To achieve these synergies, we expect to incur one-time cash costs of
  approximately $30 million spread over a 2 year period

- We have a proven track record of successfully integrating large acquisitions
  and delivering on or exceeding our expected synergies (emphasis added)

36.     The Presentation also presents pre- and post-synergy Price–EBITDA multiples, showing that the consideration paid for Stewart Enterprises fails to account for the "significant synergies" created by this monumental merger.  To illustrate, according to the Presentation, the adjusted EBITDA for Stewart Enterprises over the last twelve months ("LTM") was $115.5 million.  But because SCI expects pro forma synergies of $60 million, it has adjusted the pro forma EBITDA upward to $175.5 million.  Thus, although the pre-synergy multiple of the Proposed Transaction is 12.1x, SCI has estimated that, *taking into account the synergies, the Price–EBITDA multiple is only 7.9x.*

37.     Considering: (i) the positive outlook and attributes of Stewart Enterprises' business model; (ii) the future growth prospects in the death-care industry; and (iii) the "significant synergies" created by the merger, the consideration to Stewart Enterprises shareholders offered in the Proposed Transaction is inadequate.

**The Merger Agreement and the Voting Agreement Favor SCI to the Detriment of Stewart Enterprises Shareholders**

38.     Compounding the harm associated with the undervaluing of Stewart Enterprises' shares, the terms of the Merger Agreement unreasonably favor SCI. To protect SCI's low offer for Stewart Enterprises and to ensure that no industry bidder steps in to make a competing offer, SCI has: (i) negotiated deal protections in the Merger Agreement – to which Stewart Enterprises' Board agreed; and (ii) locked up 29.99% of Stewart Enterprises' voting power by entering into a Voting and Support Agreement with Defendant Frank Stewart and his wife, dated May 28, 2013 (the "Voting Agreement") – thereby making approval of the Proposed Transaction a *fait accompli.*

39.     Concurrently with the execution of the Merger Agreement, SCI entered into the Voting Agreement with Defendant Frank Stewart and his wife, pursuant to which the Stewarts agreed to vote their Class A and Class B shares in favor of the Proposed Transaction.  According to the schedule attached to the Voting Agreement, Defendant Frank Stewart owns 5,635,068 shares of Class A Common Stock and 3,555,020 shares of Class B Common Stock, and his wife owns 339,057 shares of Class A Common Stock.  Pursuant to Stewart Enterprises Amended and Restated Articles of Incorporation (as amended and restated as of April 3, 2008), shares of Class A Common Stock have one vote and shares of Class B Common Stock have ten votes.  Thus, the combined voting power of Defendant Frank Stewart and his wife comprises approximately 30% of the total voting power of the Company.  This deal protection alone is enough to deter any meaningful competing proposals.

40.     Nonetheless, SCI negotiated for – and the Company's Board agreed to – numerous other provisions in the Merger Agreement designed solely to protect SCI's interests, to the detriment of Stewart Enterprises' shareholders.  Such preclusive measures, considered collectively and in context, that will dissuade or preclude the emergence of a superior offer.  These deal-protection measures unreasonably and unfairly favor SCI.

41.     **No-Shop/No-Talk Provision.** The Merger Agreement contains a "No Solicitation" provision, which mandates that Stewart Enterprises, among other things: (i) "immediately cease any ongoing solicitation, knowing encouragement, discussions or negotiations with any [entity] that may be ongoing with respect to a Competing Transaction"[1]; (ii) not "solicit, initiate or knowingly facilitate or knowingly encourage . . . any inquiries regarding, or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, a Competing Transaction"; (iii) not "engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any nonpublic information in connection with or for the purpose of encouraging or facilitating, a Competing Transaction"; or (iv) not "approve, recommend or enter into, or propose to approve, recommend or enter into, any letter of intent or similar document, agreement, commitment, or agreement in principle . . . with respect to a Competing Transaction."  Thus, despite the significant deterrent effect of the Voting Agreement, the Board breached its duty by failing to negotiate for a provision allowing the Company to solicit competing offers (a "Go-Shop provision").

42.     **Notification Rights.**  Additionally, even if Stewart Enterprises were to somehow receive a non-solicited *bona fide* Competing Transaction – which seems unlikely considering the Voting Agreement and No-Shop provision – Stewart Enterprises is required by the deal-protection provisions to: (i) deliver to SCI any nonpublic information that the Company provided to an offeror of the Competing Transaction proposal.  Moreover, Stewart Enterprises must notify SCI of the

---

[1]     Pursuant to the Merger Agreement, "Competing Transaction" means any proposal to engage in any transaction or series of related transactions (other than the Transactions) that constitute, or may reasonably be expected to lead to: (i) any merger, consolidation, share exchange, business combination, recapitalization, liquidation, dissolution or other similar transaction involving the Company or any of its Subsidiaries (other than such transactions solely among any of the Company's Subsidiaries); (ii) any sale, lease, license, exchange, transfer or other disposition of, or joint venture involving, assets or businesses that constitute or represent more than 15% of the total revenue, operating income, EBITDA or fair market value of the assets of the Company and its Subsidiaries, taken as a whole;        (iii) any sale, exchange, transfer or other disposition of more than 15% of any class of equity securities, or securities convertible into or exchangeable for equity securities, of the Company or any of its Subsidiaries; (iv) any tender offer or exchange offer that, if consummated, would result in any Person becoming the Beneficial Owner of more than 15% of any class of equity securities of the Company or any of its Subsidiaries; or (v) any combination of the foregoing.

receipt of a Competing Transaction within 48 hours of receipt, and must keep SCI reasonably informed by providing SCI with revised written proposals, indications of interest, or draft agreements related to any Competing Transaction within 48 hours of receipt. Thus, the Merger Agreement unfairly assures that the process will favor SCI, as it will have more information than any other party, and no rival bidder is likely to emerge.

43. **Recommendation.** Further, the Board may not, among other things: (i) fail to include its recommendation for the Proposed Transaction ("Recommendation") in the Proxy Statement; (ii) change, qualify, withhold, withdraw, or modify in a manner adverse to SCI its Recommendation; or (iii) take any formal action or make any recommendation or public statement in connection with a tender offer or exchange offer – unless the Board determines that a Competing Transaction constitutes a Superior Proposal[2] and that the failure to take such action would constitute a breach of its fiduciary duties. But this "fiduciary out" provision is illusory because the Voting Agreement and other preclusive measures will most likely deter any competing offers.

44. **Matching Rights.** Yet there are more deal-protection provisions. Even assuming the Company were to receive a non-solicited Superior Proposal that the Board believes it was obligated by its duties to accept, the Merger Agreement mandates that Stewart Enterprises: (i) give SCI three-days written notice before taking any action; (ii) provide SCI with a copy of the Superior Proposal; and (iii) negotiate in good faith with SCI during the notice period. Only then can Stewart Enterprises pursue the Superior Proposal if it determines that it is still superior to the Proposed Transaction.

45. **Termination Fee.** And even if this were possible, there is one last deterrent in the Merger Agreement. Even if, after the three-day negotiation period, the Company decided to pursue a Superior Proposal, and signed a definitive agreement in connection with such proposal within 12 months after terminating the Proposed Transaction, Stewart Enterprises *would be obligated to pay SCI a termination fee of $27.5 million*.

---

[2] Pursuant to the Merger Agreement, "Superior Proposal" means any written *bona fide* offer or proposal made by a third party with respect to a Significant Competing Transaction on terms and conditions that the Company Board determines, in its good faith judgment, after having received the advice of its outside financial advisor and its outside legal counsel, and taking into account all legal, financial and regulatory and other aspects of the proposal and any changes to the terms of this Agreement proposed by Parent in response to such offer or proposal or otherwise, to be: (i) more favorable, including from a financial point of view, to the shareholders of the Company than the Transactions; and (ii) reasonably expected to be consummated.

46.     Although a termination fee amounting to 2% of the consideration is not – by itself – excessive, the aggregate effect of the Termination Fee with the other preclusive provisions in the Merger Agreement and the Voting Agreement is to deter the few possible suitors that could make a competing offer. The Board should have negotiated with zeal on behalf of the shareholders, but failed to do so. As a result, the Proposed Transaction includes preclusive measures used only in circumstances that do not exist here.

47.     There are few companies – or potential syndicates of companies – in the death-care industry that could potentially make an offer to purchase Stewart Enterprises, yet the Board failed to bargain for less deal-protection measures when negotiating with SCI, the largest provider of funeral and cemetery products in the United States. These excessive deal-protection provisions were not required under the unique situation presented here.

48.     As it stands, the Proposed Transaction does not adequately value Stewart Enterprises shares and the Voting Agreement and the deal protection measures in the Merger Agreement will preclude the emergence of a superior offer. Instead, as a direct result of the Board's abandonment of duty, the Proposed Transaction will benefit Defendant SCI. Accordingly, in the absence of injunctive relief, the minority shareholders will be forced to sell their shares for inadequate consideration.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Stewart Enterprises stock who are being and will be harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

50.     This action is properly maintainable as a class action under Louisiana Code of Civil Procedure Article 591.

51.     The Class is so numerous that joinder of all members is impracticable. According to Stewart Enterprises' filings with the U.S. Securities and Exchange Commission, there are approximately 82 million shares of Class A Common Stock outstanding as of the date of the Merger Agreement, held by hundreds, if not thousands, of beneficial owners.

52.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)  whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, candor, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)  whether the Individual Defendants have breached their fiduciary duty in connection with the failure in securing the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)  whether Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty, and fair dealing and/or have aided and abetted therein;

(d)  whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets; and

(e)  whether Plaintiff and the other members of the Class will be irreparably harmed if the acquisition complained of herein were consummated.

53.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

54.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

55.  The Class may be defined objectively in terms of ascertainable criteria, such that the Court may determine the constituency of the Class for purposes of the conclusiveness of any judgment that may be rendered in the case.

56.  Furthermore, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

57.  Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

- 13 -

58.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Fiduciary Duty of Due Care and Loyalty
### Against the Individual Defendants

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants owe fiduciary duties to the Stewart Enterprises public shareholders, including a duty to act with due care and undivided loyalty.

61.     The Individual Defendants have breached their fiduciary duties, as described herein, by among other things, failing to fully inform themselves as to the market value of Stewart Enterprises before entering into the Merger Agreement and failing to maximize shareholder value in connection with the Proposed Transaction.

62.     Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and will consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

63.     Plaintiff and the other members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty
### Against Defendant SCI

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Defendant SCI is sued herein as an aider and abettor of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of Stewart Enterprises.

66.     The Individual Defendants have breached their fiduciary duties in the manner described herein.  Such breaches could not and would not have occurred but for the conduct of Defendants Stewart Enterprises and SCI.

67.     Defendants Stewart Enterprises and SCI had knowledge that they were aiding and abetting the Individual Defendants' breach of fiduciary duties to the Stewart Enterprises shareholders.

68.     Defendants Stewart Enterprises and SCI rendered substantial assistance to the Individual Defendants in the breach of their fiduciary duties to the Stewart Enterprises shareholders.

69.     As a result of these Defendants' conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

70.     As a result of the unlawful actions of Defendants Stewart Enterprises and SCI, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Stewart Enterprises assets and business and will be prevented from obtaining the real value of their equity ownership in the Company.

71.     Unless the actions of these Defendants are enjoined by the Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value.

72.     Plaintiff and the other members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action, and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of the Individual Defendants and is, therefore, unlawful and unenforceable;

C.     Enjoining Defendants from proceeding with the Merger Agreement;

D.     Enjoining Defendants from consummating the Proposed Transaction unless and until the Individual Defendants implement procedures to obtain the highest possible price for the Company;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.


DATED: June ___, 2013                    YANCEY LAW FIRM


                                         _____
                                         PATRICK H. YANCEY (#23381)

                                         761 West Tunnel Blvd., Suite C
                                         Houma, LA 70360
                                         Phone: 985/853-0904
                                         985/853-0992 (Fax)

                                         Local Counsel

                                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         MARK S. REICH
                                         CHRISTOPHER M. BARRETT
                                         58 South Service Road, Suite 200
                                         Melville, NY 11747
                                         Telephone: 631/367-7100
                                         631/367-1173 (fax)

                                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                         DAVID T. WISSBROECKER
                                         655 West Broadway, Suite 1900
                                         San Diego, CA 92101-8498
                                         Telephone: 619/231-1058
                                         619/231-7423 (fax)

                                         DEANS & LYONS
                                         HAMILTON P. LINDLEY
                                         325 North Saint Paul Street, Suite 1500
                                         Dallas, TX 75201
                                         Phone: 214/736-7861
                                         214/965-8505 (fax)

                                         Counsel for Plaintiff

**PLEASE SERVE PETITION TO:**

STEWART ENTERPRISES, INC.
Through its Registered Agent:
CT Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, LA 70808

FRANK B. STEWART, JR.
5860 Bellaire Drive
New Orleans, LA 70124

JOHN B. ELSTROTT
9524 Wildwood Drive
New Orleans, LA 70123

ALDEN J. MCDONALD, JR.
10 Park Island Drive
New Orleans, LA 70160

THOMAS M. KITCHEN
229 East William David Parkway
Metairie, LA 70005

ASHTON J. RYAN, JR.
151 Chateau Saint Michel Drive
Kenner, LA 70065
RONALD H. PATRON
505 Beau Chene Drive
Mandeville, LA 70471

JOHN K. SAER, JR.
66 Husted Lane
Greenwich, CT 06830

SERVICE CORPORATION INTERNATIONAL
Through its Registered Agent:
CSC Lawyers Incorporating Service Company
211 East 7th Street, Suite 620
Austin, TX 78701

RIO ACQUISITION CORP.
Through its Registered Agent:
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808